UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>TONY MILLER,<br><br>    Defendant. | Case No. 4:15-cr-00197-JD-1<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 16 |

On March 11, 2015, Oakland police officers on routine patrol saw defendant Tony Miller, a convicted felon, abruptly exit a parked car and walk quickly away from them. The officers knew Miller and believed he was subject to warrantless searches as a condition of his post-conviction release. They stopped and searched Miller and the car, and found a handgun under the passenger seat where he had been sitting. They then arrested Miller for possession of a firearm by a felon.

Miller contends that the officers exceeded the scope of the warrantless search condition, and that his detention and the search of the car violated the Fourth Amendment. Dkt. No. 16. The Court held oral argument on the motion, which Miller attended. Neither party has asked for an evidentiary hearing and the Court finds that no disputed issues of fact require one. *See United States v. Hawkes*, 69 F. App'x 347, 348 (9th Cir. 2003) (district court may decide a motion to suppress without an evidentiary hearing when no "contested issues of fact" must be resolved). The motion is denied.

## BACKGROUND

As the undisputed facts show, Oakland Police Department officers Nate Walker and Keith Perea were assigned to patrol the area at 11th and Center Streets in Oakland on March 11, 2015 as Problem Solving Officers, a type of community policing program. *See* Dkt. No. 17-1 ¶ 3.

Following their regular practice, the officers started work by reviewing intelligence reports identifying individuals in the area known to possess guns or drugs. *Id.* ¶ 4; Dkt. No. 17-2 ¶¶ 6-9. Miller was featured in the reports, and the officers also personally knew Miller from prior encounters, including an occasion when Officer Walker had arrested him on a gun charge. *Id.*

The officers state that they ran the names of the known individuals through the California Law Enforcement Telecommunications System ("CLETS") and Alameda County Consolidated Records Information Management System ("CRIMS") systems for information about their supervision and search status. Dkt. No. 17-1 ¶ 4; Dkt. No. 17-2 ¶ 7. Although Miller disputes whether they saw the CRIMS report, he agrees that the officers saw his data in CLETS before the incident. Dkt. No. 20 at 6.

According to Officer Perea, the CLETS report showed that Miller was on Post Release Community Supervision ("PRCS"). Dkt. No. 17-1 ¶ 5; *see also* Dkt. No. 17-5 at 21. Officer Walker states that he also knew about Miller's PRCS status from records checks he had done before the March 11, 2015 incident. Dkt. No. 17-2 ¶ 7. The officers believed that Miller's PRCS status meant that he was subject to a "search clause" or "search condition." Dkt. No. 17-1 ¶¶ 5-6; Dkt. No. 17-2 ¶ 7. Miller does not deny or contest that he was on PRCS as of March 11, 2015.

The officers went into the field in full uniforms and a marked police car, and at approximately 2:27 p.m., they saw Miller sitting alone in the passenger seat of a parked gold Nissan. Dkt. No. 17-1 ¶ 7; Dkt. No. 17-2 ¶¶ 4-5. As the officers pulled up to the Nissan, Miller looked at them, got out of the car and began to walk quickly away. Dkt. No. 17-1 ¶ 8; Dkt. No. 17-2 ¶ 11. The officers thought Miller was trying distance himself from the car and was generally behaving in an unusual manner. *Id.* They detained and searched Miller and put him in the back of their patrol car to search the Nissan. They found a loaded Glock 30 handgun under the passenger seat where Miller had been sitting. Dkt. No. 16-2 at 5. The officers arrested Miller.

Miller states that the car belonged to his girlfriend, who had given him the keys and permission to use it. Dkt. No. 22-2 at 1. The government represents that Miller has admitted that the gun was his. Dkt. No. 17 at 1.

**DISCUSSION**

The government bears the burden of showing that the warrantless search of the car and the warrantless seizure and search of Miller were permissible under the Fourth Amendment. *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012). To justify the search and seizure, the government relies mainly on Miller's PRCS status. In our Circuit, an officer's advance knowledge of a search condition validates a subsequent warrantless search. *United States v. Caseres*, 533 F.3d 1064, 1075-76 (9th Cir. 2008); *see also Fitzgerald v. City of Los Angeles*, 485 F. Supp. 2d 1137, 1152 (C.D. Cal. 2007).

California implemented PRCS as part of the 2011 Realignment Act addressing public safety. *People v. Douglas*, 240 Cal. App. 4th 855, 863 (2015). It provides for local post-incarceration supervision of less serious offenders by a county department rather than the state parole authorities. *Id*. Like parole, PRCS imposes a statutory search condition that applies to all individuals in the program. *Id*. at 864. For each PRCS participant, "[t]he person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer." Cal. Penal Code § 3453(f); *see also Douglas*, 240 Cal. App. 4th at 864; *People v. Jones*, 231 Cal. App. 4th 1257, 1266 (2014). As a recent court of appeal decision states, the California Supreme Court "has construed a warrantless search condition to be tantamount to a suspicionless search condition." *Douglas*, 240 Cal. App. 4th at 864 n.7 (citing *People v. Bravo*, 43 Cal. 3d 600, 611 (1987)).

Although the California Supreme Court has not spoken yet on the issue, the courts of appeal have treated PRCS as comparable to parole rather than probation. *Id*. at 864; *People v. Jones*, 231 Cal. App. 4th 1257, 1266 (2014) ("a defendant on PRCS is not on probation and PRCS is similar to parole."). This is important because the United States Supreme Court and the California Supreme Court have found that parole is akin to imprisonment and "parolees have fewer expectations of privacy than probationers." *Samson v. California*, 547 U.S. 843, 850 (2006); *see also People v. Schmitz*, 55 Cal. 4th 909, 921 (2012) (quoting same). Suspicionless searches of parolees are lawful so long as they are not conducted arbitrarily, capriciously or for harassment. *Samson,* 547 U.S. at 856-57; *Douglas*, 240 Cal. App. 4th at 861.

3

1    This law and the operative facts here establish the reasonableness and lawfulness of the
2 officers' conduct.  Miller's detention and search were well within the scope of his PRCS
3 condition.  While the parties argue over a number of peripheral issues, the salient and undisputed
4 points are that Miller was on PRCS and subject to a warrantless search at the time of incident, and
5 the officers knew that based on the CLETS review at the start of their shift and on prior separate
6 and independent records checks they had run on Miller.  Miller does not contend that the officers
7 acted arbitrarily or capriciously in dealing with him.  These facts are enough to establish that
8 Miller's search and arrest were proper.

9    The search of the Nissan where Miller was sitting was also lawful.  As stated previously,
10 the PRCS statute expressly imposes the warrantless search condition on "possessions" as well as
11 persons.  Cal. Penal Code § 3453(f).  Miller insists that he had a reasonable expectation of privacy
12 in the car but that it belonged to his girlfriend and was not his possession.  That may be true, but it
13 does not make the search of the car illegal.  Based on federal Fourth Amendment decisions, the
14 California Supreme Court recently held that officers aware of a vehicle passenger's parole status
15 may conduct a warrantless search not only of the seat that he or she occupied but also any area
16 inside the car where the parolee could have placed or discarded an item.  *Schmitz*, 55 Cal. 4th at
17 927-28.  Since PRCS status is akin to parole, the Court sees no reason to depart from that analysis
18 here.

19    The motion to suppress is denied.

20    **IT IS SO ORDERED.**

21 Dated: January 7, 2016

_____
JAMES DONATO
United States District Judge